UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY BREEDING,<br>Plaintiff,<br>-vs-<br>UNITED PARCEL SERVICE, INC.,<br>Defendants. | Civil Action No.<br>**PLAINTIFF REQUESTS A TRIAL BY JURY**<br>**COMPLAINT** |

Plaintiff, TIMOTHY BREEDING ("Plaintiff" and/or "BREEDING"), by and through his undersigned counsel, hereby files this Civil Action Complaint against Defendant UNITED PARCEL SERVICE, INC. ("Defendant" and/or "UPS"), and upon information and belief avers the following:

## NATURE OF THE CASE

Plaintiff complains of disability discrimination, failure to provide reasonable accommodations, retaliation, and wrongful termination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et seq. ("PHRA"), and Pennsylvania common law. Plaintiff alleges that Defendant discriminated against him on the basis of his disability, disregarded his documented medical restrictions, refused to provide reasonable accommodations, and ultimately terminated his employment in retaliation for requesting accommodations, reporting a workplace injury, and exercising his protected rights. Plaintiff further alleges that Defendant's termination of his employment violated Pennsylvania public policy protecting employees who pursue workers' compensation benefits. Plaintiff seeks damages to redress the

economic losses, emotional distress, and other injuries suffered as a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct.

## JURISDICTION AND VENUE

1. This action involves a question of federal law under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over Plaintiff's forthcoming Commonwealth causes of action under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951, *et seq.*, pursuant to 28 U.S.C. § 1367, as they arise from the same nucleus of operative facts.[1]

3. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391, as Plaintiff was employed by Defendant UNITED PARCEL SERVICE, INC. ("UPS") at its Willow Grove Hub in Hatboro, Montgomery County, Pennsylvania, where the discriminatory and retaliatory conduct complained of herein occurred.

4. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2026-07186, alleging disability discrimination, failure to provide reasonable accommodations, and retaliation arising from Defendant's unlawful employment practices.

5. On or around August 6, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights pertaining to his claims arising under federal law.

6. Plaintiff has therefore exhausted his administrative remedies pertaining to his federal claims under the ADA.

7. Plaintiff now files this Complaint within ninety (90) days of his receipt of the Notice of Right to Sue from the EEOC.

## PARTIES

8. Plaintiff, TIMOTHY BREEDING (hereinafter referred to as "Plaintiff" or "BREEDING"), is an adult individual male who resides in the Commonwealth of Pennsylvania.

9. Defendant, UNITED PARCEL SERVICE, INC. (hereinafter referred to as "Defendant" or "UPS"), is a business entity authorized to conduct business within the Commonwealth of Pennsylvania.

10. At all times material, Defendant UPS operated and maintained a package delivery and distribution facility known as the Willow Grove Hub, located at 700 Blair Mill Rd / 1 Electronic Dr, Horsham, PA 19044, where Plaintiff was employed.

11. At all times material, Defendant UPS employed Plaintiff as a Package Delivery Driver, a position Plaintiff held since approximately November 2017.

12. At all times material, Defendant UPS, through its managers and supervisory employees, exercised control over Plaintiff's terms and conditions of employment, including his job duties, work assignments, medical accommodations, disciplinary actions, and continued employment.

13. At all times material, Plaintiff was qualified for his position with Defendant UPS and was capable of performing the essential functions of his employment with or without reasonable accommodation.

14. At all times relevant to this Complaint, Defendant UPS employed more than fifteen (15) employees and was an employer within the meaning of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA").

## MATERIAL FACTS

15. Plaintiff, Timothy Breeding ("Plaintiff" or "BREEDING"), is an individual with a disability within the meaning of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.

16. Plaintiff suffers from a back condition that substantially limits one or more major life activities, including lifting, bending, standing, and performing certain physical activities.

17. At all times relevant, Defendant UPS knew or should have known of Plaintiff's disability, medical restrictions, and need for reasonable accommodations.

18. Plaintiff began his employment with Defendant UPS on or around November 1, 2017, as a Package Delivery Driver.

19. Throughout his employment, Plaintiff performed his assigned duties and remained qualified for his position, with or without reasonable accommodation.

20. In or around April or May 2024, Plaintiff suffered a prior back injury that required medical treatment and temporary restrictions on his physical activities.

21. Following his initial workplace injury in or around April or May 2024, Plaintiff filed a claim for workers' compensation benefits and subsequently received workers' compensation benefits in connection with his injury.

22. As a result of his medical condition, Plaintiff's healthcare provider restricted him to entirely seated work duties.

23. Defendant UPS was aware of Plaintiff's medical restrictions and previously accommodated his disability by assigning him seated office duties for approximately three (3) weeks.

24. Thereafter, Defendant UPS permitted Plaintiff to remain off work while recovering from his injury, after which Plaintiff returned to his regular employment.

25. Defendant UPS's prior accommodations demonstrated its ability to provide Plaintiff with modified work assignments consistent with his documented medical restrictions.

26. On or around November 10, 2025, Plaintiff experienced significant back pain while performing his regular package delivery duties for Defendant UPS.

27. Despite his worsening physical condition, Plaintiff continued working and completed his assigned shift.

28. On or around November 11, 2025, Plaintiff notified UPS Supervisor Orin Thompson that he was experiencing significant back pain and requested time off to address his injury.

29. Supervisor Orin Thompson refused Plaintiff's request unless Plaintiff sought medical treatment.

30. Thereafter, UPS Center Manager Keith Outlaw directed Plaintiff to seek treatment at Liberty Urgent Care in Horsham, Pennsylvania.

31. Plaintiff complied with UPS's instructions and underwent a medical evaluation for his back injury.

32. Following his evaluation, Plaintiff was issued medical restrictions limiting his lifting to fifteen (15) pounds and prohibiting bending and stooping.

33. Defendant UPS received notice of Plaintiff's medical restrictions and assigned Plaintiff to Temporary Alternate Work ("TAW") rather than his regular package delivery duties.

34. On or around November 12, 2025, Plaintiff reported for his temporary alternate work assignment at approximately 11:00 a.m.

35. Despite Plaintiff's documented restrictions, Defendant UPS assigned him to warehouse duties involving the sorting and movement of packages.

36. The assigned duties required physical movements that aggravated Plaintiff's existing back injury and caused him significant pain.

37. Plaintiff notified UPS Center Manager Keith Outlaw that he was unable to perform the assigned duties without exacerbating his injury.

38. Plaintiff attempted to notify the appropriate supervisor that he could no longer safely continue the assignment. When he was unable to locate a supervisor, Plaintiff requested that a coworker communicate his condition to management.

39. Rather than addressing Plaintiff's physical limitations and need for reasonable accommodation, UPS Center Manager Keith Outlaw criticized Plaintiff for failing to personally notify a supervisor and for not using his personal telephone to contact management.

40. Plaintiff also communicated with Assistant Shop Steward Matt McCurdy regarding the circumstances surrounding his work assignment and medical condition.

41. Due to the worsening pain caused by UPS's assigned duties, Plaintiff returned to Liberty Urgent Care for further medical evaluation.

42. During this visit, Plaintiff reported that his assigned work activities were aggravating his injury and that he could not safely perform the physical tasks required of him.

43. Plaintiff's medical restrictions were continued, and his healthcare provider authorized additional accommodations, including a five-minute break for every thirty (30) minutes worked and modified movements to reduce strain on his back.

44. Upon leaving Liberty Urgent Care at approximately 5:05 p.m., Plaintiff briefly rested in his parked personal vehicle, utilizing the heated seats to alleviate his back pain while reviewing his medical paperwork.

45. Plaintiff thereafter returned to Defendant UPS's facility and presented his updated medical documentation to UPS Center Manager Keith Outlaw at approximately 5:41 p.m.

46. At no time did Plaintiff intend to misrepresent his whereabouts, conceal his medical treatment, or dishonestly obtain compensation for time not worked.

47. Despite Plaintiff's continuing complaints of significant back pain and his updated medical restrictions, UPS Supervisor Ed Buivydas directed Plaintiff to resume warehouse sorting duties substantially similar to those that had aggravated his injury earlier that day.

48. Plaintiff advised Supervisor Ed Buivydas that the assigned duties were causing him pain and were inconsistent with his physical limitations.

49. Plaintiff expressly requested a reasonable accommodation for his medical condition.

50. Rather than engaging in a meaningful interactive process to identify an appropriate accommodation, UPS Supervisor Ed Buivydas threatened Plaintiff with disciplinary action for allegedly failing to follow directions and proper procedures.

51. Plaintiff nevertheless attempted to complete his assigned shift despite experiencing significant pain.

52. Defendant UPS failed to provide Plaintiff with an effective accommodation that would permit him to perform his assigned duties without aggravating his documented injury.

53. Defendant UPS was aware that Plaintiff had previously performed seated office duties as a reasonable accommodation for a similar back condition in 2024.

54. Nevertheless, Defendant UPS failed to meaningfully consider whether comparable modified duties or other reasonable accommodations were available in November 2025.

55. On or around November 13, 2025, Plaintiff was summoned to a meeting attended by UPS Division Manager Fred Carr, UPS Center Manager Keith Outlaw, and union representatives.

56. During the meeting, Defendant UPS questioned Plaintiff regarding his efforts to notify management of his inability to continue his assigned duties and the approximately thirty-six (36) minutes between his departure from Liberty Urgent Care and his return to Defendant's facility.

57. Plaintiff explained the circumstances surrounding his medical treatment, his worsening back pain, and his brief period of rest in his personal vehicle.

58. Despite Plaintiff's explanation, Defendant UPS accused him of dishonesty and theft of company time.

59. Defendant UPS disregarded the medical circumstances underlying Plaintiff's conduct and his repeated efforts to obtain accommodations for his documented physical limitations.

60. Following the meeting, Defendant UPS removed Plaintiff from the workplace and escorted him from the premises.

61. On or around November 28, 2025, Defendant UPS formally terminated Plaintiff's employment by issuing a discharge notice signed by UPS Division Manager Fred Carr.

62. Defendant UPS alleged that Plaintiff had engaged in dishonesty and theft of company time on November 12, 2025, and cited Article 51 of the Local 384 Supplemental Agreement as justification for his discharge.

63. Defendant UPS's stated reason for Plaintiff's termination was pretextual and served to conceal its unlawful discriminatory and retaliatory motives.

64. Plaintiff was subjected to disciplinary scrutiny and ultimately terminated shortly after reporting his injury, providing medical documentation, and expressly requesting reasonable accommodations.

65. The close temporal proximity between Plaintiff's protected requests for accommodation and Defendant's decision to terminate his employment supports an inference of unlawful retaliation.

66. Defendant UPS knew of Plaintiff's medical restrictions, had previously accommodated a similar back condition, and nevertheless failed to reasonably accommodate Plaintiff before terminating his employment.

67. Following his removal from work, Plaintiff continued seeking medical treatment for his back condition.

68. On or around November 20, 2025, Plaintiff underwent a medical evaluation at Concentra, where his pain was assessed as severe and additional restrictions were issued requiring him to perform seated duties for approximately eighty percent (80%) of his working time.

69. Plaintiff continued receiving medical treatment and physical therapy throughout November and December 2025.

70. Plaintiff's continuing medical treatment further demonstrates the seriousness of his back condition and the need for appropriate workplace accommodations.

71. Defendant UPS's conduct constituted disability discrimination, failure to provide reasonable accommodations, and retaliation in violation of the ADA.

72. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages, lost employment benefits, financial hardship, emotional distress, humiliation, and other compensable damages.

73. Defendant UPS acted with reckless indifference to Plaintiff's federally protected rights by disregarding his documented medical restrictions, threatening discipline following his requests for accommodation, and terminating his employment under circumstances supporting an inference of discrimination and retaliation.

74. Plaintiff seeks all damages and equitable relief available under applicable law, including back pay, front pay or reinstatement, compensatory damages, punitive damages to the extent permitted by law, attorney's fees, costs, and such other relief as this Court deems appropriate.

75. The foregoing constitutes examples of the unlawful discrimination, failure to accommodate, and retaliation to which Defendant UPS subjected Plaintiff.

## AS A FIRST CAUSE OF ACTION FOR DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

76. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this Complaint as fully as if they were set forth at length.

77. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), prohibits employers from discriminating against qualified individuals on the basis of disability in regard to hiring, advancement, discharge, compensation, and other terms, conditions, and privileges of employment.

78. Plaintiff is a qualified individual with a disability as defined under 42 U.S.C. §§ 12102 and 12111(8), in that he suffers from a back condition that substantially limits major life activities, including lifting, bending, and performing certain physical activities.

79. Plaintiff was capable of performing the essential functions of his position with or without reasonable accommodation.

80. Defendant unlawfully discriminated against Plaintiff in violation of the ADA by disregarding his documented medical restrictions, assigning him physically demanding duties that aggravated his disability, failing to provide reasonable accommodations, subjecting him to unwarranted disciplinary scrutiny, and ultimately terminating his employment on November 25, 2025, because of his disability.

81. Defendant's stated justification for Plaintiff's termination, including allegations of dishonesty and theft of company time, was pretextual and served to conceal its discriminatory motives.

82. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, loss of employment benefits, emotional distress, humiliation, financial hardship, and other compensable damages.

83. Plaintiff seeks all available relief under the ADA, including back pay, front pay or reinstatement, compensatory damages, punitive damages where permitted by law, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

84. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this Complaint as fully as if they were set forth at length.

85. The ADA, 42 U.S.C. § 12203(a), prohibits employers from retaliating against employees who oppose unlawful disability discrimination or otherwise engage in activity protected under the ADA.

86. Plaintiff engaged in protected activity when he repeatedly notified Defendant of his medical restrictions, requested modified work assignments, and expressly requested reasonable accommodations for his disability on or around November 12, 2025.

87. Defendant was aware of Plaintiff's protected activity through his communications with management, medical documentation, and requests for reasonable accommodations.

88. Rather than addressing Plaintiff's requests, Defendant threatened him with disciplinary action, accused him of dishonesty and theft of company time, removed him from the workplace, and ultimately terminated his employment on November 25, 2025.

89. Defendant's adverse employment actions occurred in close temporal proximity to Plaintiff's protected activity and were causally connected to his requests for reasonable accommodations.

90. Defendant's retaliatory conduct was intentional, willful, and undertaken with disregard for Plaintiff's federally protected rights.

91. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered loss of employment, lost wages and benefits, emotional distress, humiliation, and other damages.

92. Plaintiff seeks all relief available for retaliation under the ADA, including appropriate equitable relief, back pay, front pay or reinstatement, reasonable attorneys' fees, costs, and such other relief as this Court deems appropriate.

## AS A THIRD CAUSE OF ACTION FOR WRONGFUL TERMINATION AND RETALIATION UNDER PENNSYLVANIA COMMON LAW

*Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998)

93. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this Complaint as fully as if they were set forth at length.

94. Pennsylvania common law prohibits an employer from terminating an at-will employee in retaliation for pursuing workers' compensation benefits. *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998).

95. Plaintiff suffered a work-related injury, reported his injury to Defendant UPS, sought medical treatment, and was placed on temporary alternate work assignments.

96. Shortly thereafter, Defendant UPS subjected Plaintiff to disciplinary scrutiny and ultimately terminated his employment under the pretext of dishonesty and theft of company time.

97. Defendant UPS's termination of Plaintiff was retaliatory and violated Pennsylvania public policy protecting employees who exercise their rights under the Workers' Compensation Act.

98. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, loss of employment benefits, emotional distress, humiliation, and other compensable damages.

**AS A FOURTH CAUSE OF ACTION FOR DISABILITY DISCRIMINATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT**

99. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this Complaint as fully as if they were set forth at length.

100. The Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a), prohibits employers from discriminating against employees on the basis of disability in the terms, conditions, and privileges of employment.

101. Plaintiff is an individual with a disability within the meaning of the PHRA and was qualified to perform the essential functions of his position with or without reasonable accommodation.

102. Defendant UPS unlawfully discriminated against Plaintiff by disregarding his documented medical restrictions, assigning him duties that aggravated his disability, subjecting him to unwarranted disciplinary scrutiny, and ultimately terminating his employment because of his disability.

103. Defendant's stated justification for Plaintiff's termination was pretextual and served to conceal its discriminatory motives.

104. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, loss of employment benefits, emotional distress, humiliation, and other compensable damages.

**AS A FIFTH CAUSE OF ACTION FOR FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT**

105. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this Complaint as fully as if they were set forth at length.

106. The PHRA, 43 P.S. § 955(a), and its implementing regulations require employers to provide reasonable accommodations to qualified employees with disabilities, absent undue hardship.

107. Plaintiff notified Defendant UPS of his disability, provided medical documentation establishing his physical restrictions, and requested reasonable accommodations to perform his assigned duties.

108. Despite its knowledge of Plaintiff's disability and medical restrictions, Defendant UPS failed to provide reasonable accommodations and continued assigning Plaintiff physically demanding duties that aggravated his condition.

109. Defendant UPS failed to engage in a meaningful interactive process to identify reasonable accommodations, despite having previously provided Plaintiff with modified work assignments for a similar medical condition.

110. Defendant's failure to provide reasonable accommodations violated the PHRA and caused Plaintiff to suffer physical pain, emotional distress, lost wages, and other compensable damages.

**AS A SIXTH CAUSE OF ACTION FOR RETALIATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT**

111. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this Complaint as fully as if they were set forth at length.

112. The PHRA, 43 P.S. § 955(d), prohibits employers from retaliating against employees who oppose discriminatory employment practices or exercise rights protected under the PHRA.

113. Plaintiff engaged in protected activity by notifying Defendant UPS of his disability, requesting modified work assignments, and expressly requesting reasonable accommodations for his documented medical restrictions.

114. Defendant UPS was aware of Plaintiff's protected activity through his communications with management, medical documentation, and repeated requests for reasonable accommodations.

115. Shortly after Plaintiff engaged in protected activity, Defendant UPS threatened him with disciplinary action, accused him of dishonesty and theft of company time, removed him from the workplace, and ultimately terminated his employment.

116. Defendant's adverse employment actions were causally connected to Plaintiff's protected activity and constituted unlawful retaliation in violation of the PHRA.

117. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered lost wages, loss of employment benefits, emotional distress, humiliation, and other compensable damages.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, including but not limited to, all emotional distress, back pay, front pay, punitive damages, liquidated damages, statutory damages, attorney’s fees, costs, and disbursements of action; and, for such other relief as the Court deems just and proper.

Dated: November 4, 2026

**FREUNDLICH & LITTMAN, LLC**
*Attorneys for Plaintiff*

By: */s/ Samuel C. Wilson, Esq.*
Samuel C. Wilson, Esq.
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
P: (215) 545-8500
F: (215 545-8510
E: *sam@fandllaw.com*